IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**DERRICK T. HAGGARD**                                                                           **PETITIONER**

**V.**                                                **CIVIL ACTION NO. 3:19CV878 KHJ-LGI**

**WARDEN C. RIVERS**                                                                            **RESPONDENT**

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

    Petitioner Derrick Haggard brings the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. At the time of filing, Haggard was incarcerated at the Federal Correctional Complex in Yazoo City, Mississippi (FCC-Yazoo) serving a 216-month term of imprisonment for fraud-related offenses.[1] In his petition, Haggard seeks to challenge his disciplinary conviction resulting in the loss of privileges and the forfeiture of good conduct time credit while housed at another facility. Respondent asserts that the petition should be denied because all due process requirements were met, and sufficient evidence supports the sanctions imposed. Having considered the submissions of the parties and the applicable law, the undersigned recommends that the petition be dismissed.

---

[1] The proper respondent in habeas challenges is the custodian of the petitioner. 28 U.S.C. §§ 2242-2243. At the time of filing, Petitioner correctly named the warden at FCC-Yazoo as the Respondent. However, a change-of-address on the docket indicates that Petitioner was transferred to a new facility. Notwithstanding, jurisdiction over a § 2241 petition attaches at the time of filing; thus, this court has jurisdiction, notwithstanding his transfer to a different facility and custodian. *See Griffin v. Ebbert*, 751 F.3d 288, 290 (5th Cir. 2014).

On December 5, 2018, while confined in the Federal Correctional Institution in Memphis, Tennessee, Haggard was informed by a BOP officer on post that he was running in an unauthorized area and escorted to his housing unit to retrieve his identification. According to Haggard, the area in question is a softball field connected to a running track and he informed the reporting officer that there were no signs indicating that the area was unauthorized. After Haggard produced his identification, the officer stated the following transpired:

> Inmate Haggard told me that since he was being written up that he was going back to finish his run. I informed Haggard that if he did[,] he would be locked up if he went back to the unauthorized area. At this time inmate Haggard lowered his right shoulder and charged through me in order to leave the cell. Inmate Haggard's right shoulder struck my right shoulder with enough force to knock me off balance and out of the doorway to the cell. I ordered inmate Haggard to stop. Inmate Haggard did stop. I then called for assistance and was able to apply hand restraints upon inmate Haggard with no further incident and no use of force as the inmate then complied with all orders. . . .

Haggard gives a different account, however. He states that after producing his identification, he told the officer "in a sarcastic manner," that "since you are going to write me up I'm going back running." As he attempted to leave his cell, the reporting officer stepped in front of him and radioed that he was "bringing one up front." Haggard maintains that he thought he was merely being "written up for being out of bounds." He denies that he assaulted or had any physical contact with the officer, and medical assessments of both men revealed no serious injuries.

2

On December 26, 2018, Haggard received a copy of the incident report charging him with violating Disciplinary Code 224 (Assaulting Without Serious Injury).[2] He was also advised of his rights to a disciplinary hearing, including the right to present witnesses and to present documentary evidence. Upon reviewing the incident report, staff memoranda, photographs and medical assessments of both Haggard and the reporting officer, the Unit Disciplinary Committee ("UDC") referred the matter to the Disciplinary Hearing Officer (DHO) the next day, December 27, 2018. The disciplinary hearing was subsequently held on February 21, 2019.

Initially, Haggard identified three witnesses to be called on his behalf, two of whom were expected to testify that he was not running in an unauthorized area; however, these witnesses were subsequently waived. Only the third witness, Haggard's cellmate, appeared at the hearing and he gave the following statement: "I was sitting in my cubicle doing my commissary list. Haggard walks in and tells me OG, I did not do anything. Haggard hands [the officer] his ID card and [the officer] told Haggard to turn around, put the handcuffs on him and walked him out of the cube."

Haggard's requested staff representative also appeared at the disciplinary hearing on his behalf and gave the following statement: "I reviewed the incident report and spoke with several inmates however, other than [Haggard's cellmate,] no one witnessed the incident." The staff representative goes on to note, however: "I have not observed

---

[2] Though Haggard was initially charged with also violating Code 316 (Being in Unauthorized Area), the DHO report reflects that he was only found guilty of violating Code 224 (Assaulting Without Serious Injury).

anything in Haggard's behavior which would lead me to believe that he would assault a staff member."

Upon reviewing the matter, the DHO found that the greater weight of the evidence established that Haggard violated Code 224 as alleged. Haggard was sanctioned with, *inter alia*, a disallowance of 27 days of good-conduct time, and given a copy of the DHO report detailing the reasons for the disciplinary action taken. After exhausting his administrative remedies, Haggard filed the instant petition alleging that the DHO was biased against him and that his due process rights were violated during the disciplinary proceedings.[3] As grounds for relief, he requests that the incident report be expunged, and that his good-conduct time be restored.

## Discussion

It is well-settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment. *Wolff v. McDonnell*, 418 U.S. 539 (1974). "This interest, however, must be accommodated in the distinctive setting of a prison, where disciplinary proceedings take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citation and internal quotation marks omitted). Thus, the United States Supreme

---

[3] He also appears to allege claims sounding in retaliation and conspiracy, neither of which are properly pursued in a habeas petition. *See Deen-Mitchell v. Young*, 490 F. App'x 650, 650 (5th Cir. 2012) (citation omitted) (noting that if a favorable determination on a claim would not automatically entitle an inmate to an accelerated release, the claim is not properly brought in a habeas corpus petition).

Court has long held that prison disciplinary proceedings are not a part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights of such proceedings. *Id.* at 566. Prison disciplinary hearings comport with due process when an inmate is given (1) advance written notice of the charges at least 24 hours prior to the proceedings; (2) the opportunity to present documentary evidence and call witnesses in his defense; and, (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action taken. *Martinez v. Young*, 653 F. App'x 835, 836 (5th Cir. 2016) (citing *Wolff*, 418 U.S. at 563–70). Here, the evidence of record reflects that Haggard received all of the procedural due process to which he was entitled, and he does not contend otherwise.

The gravamen of Haggard's complaint, rather, is that the DHO who presided over his disciplinary hearing was biased against him and that the evidence was insufficient to support the sanctions imposed. In support, Haggard points to the following comments in the DHO's disciplinary decision:

> The DHO believes the [cellmate's] statement is not reliable based on the relationship as your cellmate. It is more than reasonable to believe [the cellmate] would not be honest about the incident to prevent you from disciplinary sanctions.
>
> The DHO relied on the statement of the [reporting officer] who stated you lowered your shoulder and charged through him in order to leave the cell. [The reporting officer] also stated your right shoulder struck his right shoulder with enough force to knock him off balance and out of the door way of the cell. The DHO has no obvious reason to doubt the statement of [the reporting officer] and you did not provide a reason he would provide a false statement. However, the DHO believes you are not being honest about the assault on [the reporting officer] to avoid disciplinary sanctions.

An inmate is entitled to an impartial decision maker as a matter of law, but Haggard offers nothing more than conclusory allegations and speculation to support his impartiality claim. *Wolff*, 418 U.S. at 563–72. Construed liberally, Haggard broadly contends that DHOs are predisposed to issuing convictions to avoid staff animosity and resignations. He also suggests that DHOs have a financial incentive "to find prisoners guilty based on a perception that a $5.00 [ ] surcharge on all disciplinary convictions might raise revenue to prevent prison staff layoffs." Additionally, Haggard claims that the DHO's comments that he had no obvious reason to doubt the reporting officer's credibility, while simultaneously questioning that of his cellmate's, should cast doubt on the DHO's ability to remain impartial.

Haggard's arguments notwithstanding, there is no evidence that the DHO in this case was precluded from making "a fair, impartial, and informed decision." *Morissey v. Brewer*, 408 U.S. 471, 486 (1972). The DHO was not involved in the facts giving rise to the charges or the investigation, nor was he was the reporting or investigating officer, a member of the UDC, or a witness to the incident. *Pedraza v. Meyer*, 919 F.2d 317, 320 (5th Cir. 1990). Moreover, this Court "is not required to examine the entire record of a disciplinary proceeding, independently assess witness credibility, or weigh the evidence to determine whether 'some evidence' supports the DHO's decision." *Kapordelis v. Myers*, 16 F.4th 1195, 1200 (5th Cir. 2021) (citing *Hill*, 472 U.S. at 455-56). "Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." *Id.* The relevant inquiry is whether there is any evidence in

the record that could support the disciplinary decision. *Hill*, 105 S.Ct. 2768, 2774, 472 U.S. 445, 455–56 (U.S.,1985).  "[O]nly where there is *no evidence whatsoever* to support the decision of the prison officials," will prison disciplinary hearings be overturned. *Kapordelis*, 16 F.4th at 1200 (citation and internal quotation marks omitted) (emphasis added by Fifth Circuit).  Such evidence exists here.

The DHO considered statements and testimony from Haggard, the reporting officer, Haggard's cellmate, and his staff representative, as well as photographs and injury assessments taken of both men after the incident.  Though Haggard faults the DHO for not assigning more weight to his cellmate's credibility, he has not shown that the cellmate's testimony was exculpatory per se.  The cellmate merely states that Haggard walked into their cell and told him he didn't do anything.  He confirms that Haggard produced his ID and was escorted out of the cell, but he does not directly address whether there was an assault.  And while Haggard notes that there are inconsistencies in the record as to whether the reporting officer was in fact injured,[4] these inconsistencies do not undermine his disciplinary conviction.  He was charged with violating Disciplinary Code 224—Assaulting *Without* Serious Injury.

In compliance with *Wolf*, the DHO's report also details the reasons for the disciplinary action taken. The DHO explains that assaults not only "pose[] a substantial threat to the secure and orderly operation of the facility," but it "promote[s] a lack of

---

[4] The incident report indicates that the reporting officer sustained a bruise on his right shoulder, but a memorandum submitted by Haggard as an exhibit to his traverse, purportedly from the investigating officer who authored the report, indicates that no injuries were sustained.

respect for authority and seriously detract[s] from a staff member's ability to maintain control of their assigned area of responsibility." Such action also "interferes with the completion of a staff member's obligation to duty." Given these institutional and safety concerns, Haggard has not shown that the sanctions imposed were unwarranted.

It is well-settled that the authority to administer prison discipline is within the discretion of the BOP, and none of Haggard's arguments, including those not expressly addressed herein,[5] provide a basis for disturbing the DHO's finding, nor the sanctions imposed. The "[r]evocation of good time credits is not comparable to a criminal conviction. . . ," *Hill*, 472 U.S. at 455, and "only where there is no evidence whatsoever to support the decision of the prison officials" will a prison disciplinary decision be overturned. *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994). Because the record demonstrates that there was at least some evidence to support the finding of guilt, the undersigned recommends that the instant petition be denied.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of

---

[5] Haggard contends, for example, that he was not informed about a confidential informant who provided information to support the DHO's findings. He appears to be referencing the following language in subsection "E" on the Disciplinary Report Form:

> Confidential information was used by DHO in support of his findings but was not revealed to the inmate. The confidential information was documented in a separate report. The confidential information has been (confidential informants have been) determined to be reliable because: N/A

Contrary to what Haggard argues, the DHO clearly indicates that this subsection was not applicable in this case.

8

Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted on June 7, 2022.

s/ LaKeysha Greer Isaac<br>UNITED STATES MAGISTRATE JUDGE